**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLOS RAMIREZ-MONTOYA, | |
| Petitioner, | CIVIL ACTION NO. 3:25-CV-02411 |
| v. | (MEHALCHICK, J.) |
| MICHAEL T. ROSE, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CRAIG A. LOWE, Warden of PIKE COUNTY JAIL, | |
| Respondents. | |

**<u>MEMORANDUM</u>**

Petitioner, Carlos Ramirez-Montoya ("Ramirez-Montoya"), a Honduran national, brings this petition for writ of habeas corpus. (Doc. 1). On December 15, 2025, Ramirez-Montoya filed the instant petition, requesting that Respondents Michael T. Rose, Kristi Noem, Department of Homeland Security, Pamela Bondi, Executive Office for Immigration Review, and Craig A. Lowe ("Lowe")[1] release him from custody at the Pike County

---

[1] The government asserts that pursuant to the only proper respondent in this case is Craig A. Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 4, at 1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Ramirez-Montoya is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 4, at 1); *see Rumsfeld*, 542 U.S. at 434. As such, all other respondents are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Ramirez-

Correctional Facility in Lords Valley, Pennsylvania ("Pike County") or provide a bond hearing pursuant to 8 U.S.C. § 1226 within seven days. (Doc. 1, ¶ 17). For the following reasons, Ramirez-Montoya's petition (Doc. 1) shall be **GRANTED,** and Lowe is **ORDERED** to release Ramirez-Montoya from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Ramirez-Montoya's petition and exhibits thereto. (Doc. 1). Ramirez-Montoya is a Honduran national who entered the United States without inspection in 1999 and was charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), facing removal in 2013. (Doc. 1, ¶ 6). Ramirez-Montoya filed an application for cancellation of removal, but an immigration judge denied it because his pre-2016 conviction for unlawful taking under 18 Pa. Cons. Stat. Ann. § 3921(a) is a Crime Involving Moral Turpitude ("CIMT"), rendering him ineligible for cancellation of removal. (Doc. 1, ¶ 7). Ramirez-Montoya appealed the denial of his application to the Board of Immigration Appeals (the "Board"). (Doc. 1, ¶ 8).[2]

In August 2024, police discovered Ramirez-Montoya sleeping in his truck on the side of the road and conducted a blood test, which affirmed drugs in his blood. (Doc. 1, ¶10). He pleaded guilty to Driving Under the Influence under 75 Pa. Cons. Stat. Ann. § 3802, served

---

Montoya on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

[2] Ramirez-Montoya argues that because his conviction occurred before the Board's decision in *Matter of Diaz Lizarrage*, 26 I. & N. Dec. 847 (BIA 2016), the conviction was not for a CIMT. (Doc. 1, ¶ 8).

three days in jail, and was taken to Pike County. (Doc. 1, ¶ 11). On July 14, 2025, the Board granted Ramirez-Montoya's appeal, agreeing with his argument that the prior conviction was not a CIMT. (Doc. 1, ¶ 12). Since February 11, 2025, the Department of Homeland Security (the "DHS") has held Ramirez-Montoya in custody. (Doc. 1, ¶ 13). Ramirez-Montoya has been clean from drugs since his last detention. (Doc. 1, ¶ 13).

## II.  LEGAL STANDARD

The district courts' power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2241. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. When reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). While habeas relief typically involves release from custody, courts may order alternative relief such as prohibitions on removal in immigration related habeas cases, *see J. G. G.*, 604 U.S. at 673 (finding that a noncitizen detained by ICE may challenge removal in a habeas petition), or a bond hearing if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory

protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III. DISCUSSION

The United States District Court for the Central District of California recently held that DHS's new policy, requiring "ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)," was unlawful. *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *1, 11 (C.D. Cal. Nov. 20, 2025). Specifically, the district court held that "applicants for admission," as used in 8 U.S.C. § 1225(a), refers to only those noncitizens who have not lawfully entered "into the United States after inspection and authorization by an immigration officer." *Bautista*, 2025 WL 3289861, at *9 (emphasis in original) (quoting § 1101(a)(13)(A), which is the Immigration and Nationality Act's (the "INA") definition of "applicants for admission"). Thus, "[i]ndividuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as 'applicant for admission[,]'" affording them an individualized bond hearing under § 1226(a). *Bautista*, 2025 WL 3289861, at *9. A few days later, the same district court certified a Rule 23(b)(2) class, known as the Bond Eligible Class, for:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

4

*Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

The class certification extended the district court's declaratory judgment that the new DHS policy violated the INA and due process rights, and entitled all class members to the same declaratory relief granted in the court's first decision. *Bautista*, 2025 WL 3288403, at *9.

Ramirez-Montoya argues that by denying him a bond hearing under § 1226(a) and subjecting him to mandatory detention under § 1225(b)(2), "[Lowe] violate[s] [his] statutory rights under the INA and the Court's judgment in *Maldonado Bautista*." (Doc. 1, ¶ 37). Lowe counters and points out that the *Bautista* court has not issued a final judgment, rendering no change in the legality of Ramirez-Montoya's detention. (Doc. 4, at 3).[3] Regardless of the final judgment the Bautista court issued (Doc. 5-2), the Court will decide the instant case based on the statutory and constitutional claims. (Doc. 1)

The Court now turns to the questions of whether Ramirez-Montoya was improperly detained under 8 U.S.C. 1225(b)(2), when he should have been detained under 8 U.S.C. § 1226(a), and, if he was improperly detained, whether his due process rights were violated. (Doc. 1, ¶ 37; Doc. 4). Ramirez-Montoya contends that he should have been detained under § 1226(a), and since he was improperly detained under §1225(b)(2) and denied a bond hearing, he suffered a due process violation and should be released from detention. (Doc. 1, ¶37). Lowe contends that Ramirez-Montoya was properly detained under §1225(b)(2)(A) and that an immigration detainee has no constitutional right to release on bond when held pursuant to a statutory provision, like §1225(b)(2)(A), that requires mandatory detention. (Doc. 4, at 25).

A. RAMIREZ-MONTOYA WAS IMPROPERLY DETAINED PURSUANT TO 8 U.S.C. 1225(B)(2)(A).

---

[3] At the time of Lowe filing his response, *Bautista* had not issue a final judgment in its case. 2025 WL 3289861, at *11.

Ramirez-Montoya was improperly detained under 8 U.S.C. 1225(b)(2)(A), when he should have been detained under 8 U.S.C. § 1226(a). Ramirez-Montoya argues that, as a member of the Bond Eligible Class, he is entitled to consideration for release on bond under 8 U.S.C. § 1226. (Doc. 1, ¶ 33). Lowe contends that Ramirez-Montoya falls squarely within the statutory definition of noncitizens subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), under which he is ineligible for release on bond. (Doc. 4, at 25).

The INA is a comprehensive statute regulating immigration, which has been repeatedly reworked by Congress since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009. 8 U.S.C. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, and they may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. Two recent BIA decisions eliminated the availability of bond hearings under § 1225(b)(2)(A). In *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the BIA determined that an applicant for admission who is arrested and detained without a warrant while arriving in the United States and subsequently placed in removal and subsequently placed in removal proceedings is detained under § 1225 and is ineligible for any subsequent release on bond. In *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025), the

BIA held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings.

To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to an alien who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Bethancourt Soto v Soto*, No. 25-cv-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (collecting cases).

Section 1225(a)(1) defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Quispe v. Rose*, No. 3:25-CV-02276, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025); *see also Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Quispe*, 2025 WL 3537279, at *5; *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL2985150, at *16 n.7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already

been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning. *Quispe*, 2025 WL 3537279, at *5; *Kashranov*, 2025 WL 3188399, at *6.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Certain noncitizens, who are already in the country, can be detained pending the outcome of their removal proceedings under § 1226(a). *Jennings*, 583 U.S. at 288-89; *Quispe*, 2025 WL 3537279, at *5. Section 1226(a) "[a]pplies to aliens already present in the United States" and "creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Cantu-Cortes*, 2025 WL 3171639, at *1 (citing *Jennings*, 583 U.S. at 303). Under § 1226(a), the Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). "Immigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At a bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); see *Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new policy, which provides that all persons who entered the United States without inspection, regardless of when the person is apprehended, shall now be subject to mandatory detention provision under § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Dec. 19, 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are apprehended by ICE. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at *7 (collecting cases).

Here, § 1226(a), not § 1225(b)(2)(A), applies to Lowe's detention of Ramirez-Montoya. While Lowe asserts that Ramirez-Montoya is "seeking admission" to the United States because he has not been lawfully admitted, and as such he is subject to mandatory detention under §1225(b)(2)(A), the Court finds that Ramirez-Montoya is not seeking admission into the United States. Ramirez-Montoya is not actively attempting to come into the United States at a border or port of entry. Based on the plain meaning of the phrase "seeking admission", Ramirez-Montoya sought admission when he entered the United States

9

over twenty years ago and was last apprehended by immigration authorities on February 11, 2025. (Doc. 1, ¶ 5); *see* Kashranov, 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization").

Instead, § 1226(a) applies to individuals, like Ramirez-Montoya, who have been residing in the United States for an extended period of time. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"). Unlike § 1225(b)(2)(A), § 1226(a) provides for bond or conditional parole. § 1226(a)(2). As such, mandatory detention is not warranted for Ramirez-Montoya.

B. Ramirez-Montoya's continued detention under § 1225(b)(2)(A) violates his due process rights.

Ramirez-Montoya avers that, pursuant to *Bautista*, Lowe has violated his due process rights under § 1226(a). (Doc. 1, ¶ 37). Lowe counters that the *Bautista* court has declined to enter a class-wide judgment, leaving no declaratory relief regarding the proper interpretation of 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provision. (Doc. 4, at 16).[4]

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens],

_____

[4] Because the *Bautista* court entered a final judgment after Lowe filed his response (Doc. 5-2), this argument is moot.

whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Ramirez-Montoya's favor. Lowe has deprived Ramirez-Montoya of his physical liberty through improper detention without the possibility of bond under § 1225(b)(2)(A). *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Ramirez-Montoya's favor as he remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). Finally, the third

*Mathews* factor, the government's interest, also weighs in Ramirez-Montoya's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community. *Zadvydas,* 533 U.S. at 690; *Quispe,* 2025 WL 3537279, at *7; *Soto,* 2025 WL 2976572, at *8. Here, Ramirez-Montoya poses no such risk to the government's interest in detaining him. Ramirez-Montoya has been clean from drugs since his last detention and the Board agreed that his pre-2016 conviction was not a CIMT for immigration purposes. (Doc. 1, ¶¶ 12-13). Although Ramirez-Montoya has a criminal record (Doc. 4-2, at 2-3), Lowe does not allege that he poses a flight risk or danger to the community. (Doc. 4). As each *Mathews* factor weighs in Ramirez-Montoya's favor, his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights. Accordingly, Ramirez-Montoya's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Ramirez-Montoya from custody.

## IV.    CONCLUSION

For the foregoing reasons, Ramirez-Montoya's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Ramirez-Montoya from custody. Lowe is also permanently enjoined from re-detaining Ramirez-Montoya under § 1225(b)(2)(A). Ramirez-Montoya may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing.

An appropriate Order follows.

**BY THE COURT:**

Dated: December 22, 2025

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**